UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────────────

TAHITA JENKINS,

                    Plaintiff,                      08 Civ. 6814 (JGK)

          - against –                               OPINION AND ORDER

NEW YORK CITY TRANSIT AUTHORITY, ET AL.,

                    Defendants.
─────────────────────────────────────────

JOHN G. KOELTL, District Judge:

     The plaintiff, Tahita Jenkins, brings this action against

the defendants, the New York City Transit Authority ("Transit

Authority"), Patrick Sullivan ("Sullivan"), and Phyllis Chambers

("Chambers") pursuant to Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e et seq. ("Title VII"); the New York

State Human Rights Law, N.Y. Exec. L. § 290 et seq. ("NYSHRL");

and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-

101 et seq. ("NYCHRL").  The plaintiff, a Pentecostal American,

asserts that the defendants discriminated against her because of

her religion by rejecting her request to wear a skirt as part of

her Transit Authority bus operator uniform and then terminating

her when she refused to wear pants.  The defendants have moved

to dismiss her Complaint in part under Federal Rule of Civil

Procedure 12(b)(6) for failure to state a claim upon which

relief can be granted.

                              I.

     In deciding a motion to dismiss pursuant to Federal Rule of

Civil Procedure 12(b)(6), the allegations in the Complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor.  McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007).  The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient."  Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).  The Court should not dismiss the Complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face."  Twombly v. Bell Atlantic Corp., 127 S.Ct. 1955, 1974 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).  While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id.

When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the Complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of

2

which judicial notice may be taken.  See Chambers v. Time

Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

                                **II.**

     The following facts are accepted as true for purposes of

this motion.  The plaintiff, Tahita Jenkins, applied to the

Transit Authority to become a bus operator.  (Compl. ¶ 33-36.)

According to the Pentecostal American religion, of which she is

a member, she may only wear skirts which cover her knees.

(Compl. ¶ 29.)  In May 2007, the plaintiff received an interview

for employment with the Transit Authority.  (Compl. ¶ 36.)

During the interview, the plaintiff informed her interviewer

that she could not wear pants because of her religious beliefs.

(Compl. ¶ 37.)  The interviewer told her that she did not think

the plaintiff's dress restrictions would be a problem, given

that they had had other women who had expressed similar concerns

in past interviews.  (Compl. ¶ 37.)

     On May 8, 2007, the Transit Authority hired the plaintiff

as a bus operator.  (Compl. ¶ 40.)  When the plaintiff reported

for training, Transit Authority employees told her that she was

required to wear pants as part of her uniform as a bus operator.

(Compl. ¶ 43.)  Upon the Transit Authority's request, the

plaintiff obtained a letter from her pastor confirming that her

refusal to wear pants was based upon a sincere religious belief.

(Compl. ¶ 45-47.)  The Transit Authority nevertheless required

the plaintiff to sign a uniform policy that required her to wear pants, which she signed under protest.  (Compl. ¶ 51.)

After signing the policy, however, a representative of the Transit Authority met with the plaintiff to measure her for a skort.  (Compl. ¶ 52.)  A skort is defined as a pair of shorts with a flap or panel across the front and sometimes the back to resemble a skirt.  (Compl. ¶ 53.)  The plaintiff wore a skirt throughout her training to become a bus operator.  (Compl. ¶ 61.)  Throughout the training, the plaintiff alleges that a Transit Authority employee, Phyllis Chambers, singled out the plaintiff for public ridicule, harassment, and embarrassment in retaliation for her request for a reasonable religious accommodation.  (Compl. ¶ 57.)  She also claims that, at her final road test, her instructor required her to drive on elongated routes, and at the completion of her road test, said to her: "I can't find anything wrong.  You passed."  (Compl. ¶ 58-59.)

On May 27, 2007, the plaintiff successfully completed her training.  (Compl. ¶ 60.)  Two days later, she was asked to attend a meeting with Transit Authority employees, including members of the Transit Authority's legal department, in which she was told she could wear "culottes."  (Compl. ¶ 62-66.) Culottes are women's trousers that are cut to resemble a skirt. (Compl. ¶ 66.)  The plaintiff learned from her pastor that

4

culottes would not be acceptable and therefore told the Transit
Authority that she would either wear a skirt the same length as
the Transit Authority-issued culottes, or that she would wear a
skort, which she had in fact already ordered through the Transit
Authority.  (Compl. ¶ 67-69.)  The Transit Authority refused to
make either of these accommodations for the plaintiff and told
her that she should either resign or be terminated.  (Compl. ¶
71.)  However, the plaintiff has testified that she herself has
viewed a female bus driver wearing a skirt.  (Compl. ¶ 74.)  The
Transit Authority terminated the plaintiff, which the plaintiff
alleges was "in retaliation for her request for a reasonable
accommodation and in discrimination of the terms, privileges and
conditions of her employment based upon her sincere religious
beliefs."  (Compl. ¶ 76.)

On June 5, 2007, the plaintiff filed a timely charge of
discrimination with the Equal Employment Opportunity Commission
("EEOC").  The EEOC referred the matter to the Department of
Justice on April 9, 2008.  On May 1, 2008, she received a Notice
of Right to Sue Letter from the Department of Justice.  She
timely brought this action on July 28, 2008.

### III.

The plaintiff's Complaint asserts eighteen causes of action
against the defendants under Title VII, the NYSHRL, the NYCHRL,
and the New York State and United States Constitutions.  The

defendants moved to dismiss the plaintiff's Complaint in part,
asserting that the Title VII claims against individual
defendants Sullivan and Chambers, the causes of action under the
NYCHRL, the disparate impact claims, and the Title VII
retaliation claim should be dismissed.  After the filing of the
motion to dismiss, however, the plaintiff agreed to withdraw the
Title VII claims against the individual defendants, and the
defendants agreed to withdraw their argument that the causes of
action brought under the New York City Administrative Code
should be dismissed.  Therefore, only the third and fourth
arguments remain.

**A.**

In their third argument, the defendants argue that the
plaintiff's disparate impact claim under Title VII and the
NYCHRL, the Seventh Claim for Relief, should be dismissed on
three grounds.  First, they assert that the claim is defectively
pleaded.  Second, they argue that the claim is not exhausted
because it was not asserted in the plaintiff's EEOC charge.
Finally, the defendants contend that the claim cannot be brought
as a matter of law because neither Title VII nor the NYCHRL
recognize a disparate impact claim based on religion.  The Court
addresses each of these arguments in turn.

**1.**

To state a claim for disparate impact under Title VII, a

plaintiff need only plead "sufficient factual matter, accepted
as true, to 'state a claim to relief that is plausible on its
face.'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at
570).  A plaintiff is not required to plead facts sufficient to
establish a prima facie case.  Boykin v. Keycorp, 521 F.3d 202,
212 (2d Cir. 2008) (citing Swierkiewicz v. Sorema N.A., 534 U.S.
506 (2002)).

The Supreme Court recently explained in Iqbal that two
principles underlie the Twombly decision.  "First, the tenet
that a court must accept as true all of the allegations
contained in a complaint is inapplicable to legal conclusions .
. . .  Second, only a complaint that states a plausible claim
for relief survives a motion to dismiss."  Iqbal, 129 S.Ct. at
1949-50.  In explaining the second prong of this approach, the
Supreme Court explained:

> Determining whether a complaint states a plausible claim
> for relief will . . . be a context-specific task that
> requires the reviewing court to draw on its judicial
> experience and common sense . . . .  But where the well-
> pleaded facts do not permit the court to infer more than
> the mere possibility of misconduct, the complaint has
> alleged-but it has not "show[n]"-"that the pleader is
> entitled to relief."  Fed. R. Civ. P. 8(a)(2).

Id. at 1950 (internal citation omitted).

It is unnecessary in this case to test the dividing line
that distinguishes a discrimination claim which, although not
required to set forth a prima facie case under Swerkiewicz, has
alleged sufficient facts to make it plausible under Iqbal and

7

Twombly.  See also Boykin, 521 F.3d at 213 ("We need not locate
the outer bounds of Twombly's new standard for assessing
pleadings under Rule 8(a) here, because no amplification was
necessary in this case.")  In this case, the plaintiff has
alleged sufficient facts about the allegedly discriminatory
policies to make her disparate impact claim not only possible,
but plausible.

The defendants assert that a disparate impact claim
requires an allegation that an employer's policy has had a
statistically significant, disproportionate, and negative effect
on one protected group as compared to others, but the case they
cite in support of that assertion involved a motion for summary
judgment.  See Davis v. City of New York, No. 99 Civ. 4955, 2003
WL 22832165 (S.D.N.Y. Nov. 25, 2003).  To the extent the
defendants' argument is that a plaintiff must provide
statistical support for a disparate impact claim in order to
survive a motion to dismiss, that argument is incorrect.  It
would be inappropriate to require a plaintiff to produce
statistics to support her disparate impact claim before the
plaintiff has had the benefit of discovery.  See Swierkiewicz,
534 U.S. at 511-12.

"Swierkiewicz does not, however, relieve a plaintiff of the
obligation to identify in his pleadings a specific employment
practice that is the cause of the disparate impact."  Kulkarni

v. City Univ. of New York, No. 01 Civ. 10628, 2002 WL 1315596,
at *2 (S.D.N.Y. Jun. 14, 2002).  A "[p]laintiff must identify a
specific employment practice to 'give the defendant fair notice
of what the plaintiff's claim is and the grounds upon which it
rests.'"  Id. (quoting Swierkiewicz, 534 U.S. at 512).

     The plaintiff's Complaint identifies a specific employment
practice--the Transit Authority's policy of requiring all bus
operators to wear pants.  She also alleges that she was
terminated because her religion prevents her from complying with
that policy.  She also alleges that there was no business
justification for the Transit Authority's actions.  It is plain
that the plaintiff is alleging that the policy has a disparate
impact on Pentecostal American women because their religion
prohibits them from wearing pants, and the Complaint gives the
defendants fair notice of these allegations.  The allegations in
the Complaint are therefore sufficient to state a claim of
disparate impact.

**2.**

     The defendants also argue that this court lacks
jurisdiction to hear the plaintiff's disparate impact claim
under Title VII because that claim was not asserted in her EEOC
charge.

     The general rule is that a plaintiff may not pursue a Title
VII claim in federal court without first pursuing available

administrative remedies and filing a timely complaint with the
EEOC.  Mathirampuzha v. Potter, 548 F.3d 70, 74-75 (2d Cir.
2008); Deravin v. Kerik, 335 F.3d 195, 200 (2d Cir. 2003).  "The
exhaustion requirement is relaxed under the 'reasonably related'
doctrine if, inter alia, 'the conduct complained of would fall
within the scope of the EEOC investigation which can reasonably
be expected to grow out of the charge of discrimination.'"
Mathirampuzha, 548 F.3d at 76 (quoting Terry v. Ashcroft, 336
F.3d 128, 151 (2d Cir. 2003)); see also Deravin, 335 F.3d at
200-01.  "This exception to the exhaustion requirement 'is
essentially an allowance of loose pleading' and is based on the
recognition that 'EEOC charges frequently are filled out by
employees without the benefit of counsel and that their primary
purpose is to alert the EEOC to the discrimination that a
plaintiff claims [he] is suffering.'"  Deravin, 335 F.3d at 201
(quoting Butts v. City of New York Dep't of Hous. Pres. & Dev.,
990 F.2d 1397, 1402 (2d Cir. 1993), superseded by statute on
other grounds as stated in Hawkins v. 1115 Legal Serv. Care, 163
F.3d 684 (2d Cir. 1998)) (alteration in original).

     The allegations in the plaintiff's EEOC charge fit well
within the "loose pleading" standards set by the Title VII
exhaustion requirement.  The plaintiff checked the box labeled
"religion" as the cause of discrimination on her EEOC charge
form.  The plaintiff's affidavit in support of her EEOC charge

also includes factual allegations that describe, in essence, discriminatory conduct having a disparate impact on Pentecostal American women.  The affidavit states that the Transit Authority enforced a uniform policy requiring bus operators to wear pants, that her religious beliefs as a Pentecostal did not permit her to wear pants, and that she was terminated because she refused to comply with the uniform policy.  It would be reasonable to expect that an investigation arising out of these allegations would inquire into whether such a policy has a disparate impact on members of the plaintiff's religion.

Even though the plaintiff may not have used the term "disparate impact" in her charge, "[i]t is the substance of the charge and not its label that controls." Mathirampuzha, 548 F.3d at 76 (quoting Deravin, 335 F.3d at 201); see also Williams v. New York City Hous. Auth., 458 F.3d 67, 71 (2d Cir. 2006) (holding that sex discrimination claim was reasonably related to retaliation claim made in EEOC charge where box for sex discrimination on EEOC charge was not marked, but where charge included factual allegations consist with sex discrimination). The plaintiff's disparate impact claim is therefore not barred because it is reasonably related to the conduct alleged in her EEOC charge.

### 3.

The defendants also argue that the plaintiff's disparate

impact claim should be dismissed because there is no claim available under Title VII and the NYCHRL for disparate impact based on religion.  However, this argument is inconsistent with the plain language of Title VII.  The Civil Rights Act of 1991 amended Title VII to add 42 U.S.C. § 2000e-2(k), which lays out the burden of proof in disparate impact cases.  That section provides that an unlawful employment practice based on disparate impact can be based upon "a particular employment practice that causes a disparate impact on the basis of . . . religion . . . and the respondent fails to demonstrate that the challenged practice is job related for the position in question and consistent with business necessity."  42 U.S.C. § 2000e-2(k)(1)(A)(i).

The defendants cite EEOC v. Sambo's of Georgia, Inc., 530 F. Supp. 86, 92-93 (N.D. Ga. 1981) for the "ineluctable" conclusion that Congress did not intend for the disparate impact doctrine to be applied to cases of religious discrimination. However, this case long predated the 1991 Act, which explicitly includes religion in the part of the statute discussing the burden of proof for disparate impact claims.

The defendants also note that they could not find a single Title VII case in which a disparate impact claim based on religious discrimination had been successful.  However, numerous courts have considered disparate impact claims based on

religious discrimination and dismissed them for lack of evidence rather than for failure to state a claim.  See, e.g., Barrow v. Greenville Indep. Sch. Dist., 480 F.3d 377, 382-83 (5th Cir. 2007); Soria v. Ozinga Bros., Inc., 704 F.2d 990, 994-97 (7th Cir. 1983); Tucker v. Reno, 205 F. Supp. 2d 1169, 1174-75 (D. Or. 2002).  Judge Lynch of this Court granted an employer's motion to dismiss a disparate impact claim based on religious discrimination, but did so because the plaintiff had failed to meet the elements required to state a disparate impact claim. See Collette v. St. Luke's Roosevelt Hosp., 132 F. Supp. 2d 256, 276-78 (S.D.N.Y. 2001).  These cases leave open the possibility that a disparate impact claim based on religious discrimination can be stated if it is properly pleaded.  The defendants' argument that a disparate impact claim based on religious discrimination does not exist is therefore without merit.

For the foregoing reasons, the defendants' motion to dismiss the plaintiff's disparate impact claim under Title VII is **denied**.  Because employment discrimination claims under the NYCHRL are "analytically identical" to claims under Title VII, see, e.g., Malacarne v. City Univ. of New York, 289 Fed. Appx. 446, 447 n.1 (2d Cir. Aug. 8, 2008), the defendants' motion to dismiss the plaintiff's disparate impact claim under the NYCHRL must also be **denied**.

### B.

The defendants also move to dismiss the plaintiff's retaliation claim under Title VII, the Eighth Claim for Relief, on the ground that the plaintiff did not assert that claim, in form or substance, in her EEOC charge. Citing Malarkey v. Texaco, Inc., 983 F.2d 1204, 1209 (2d Cir. 1993), the defendants maintain that the plaintiff cannot assert her unexhausted retaliation claim because the alleged retaliatory action of her termination occurred before she filed her EEOC charge.

Malarkey involved an age discrimination plaintiff who amended her complaint to add an unexhausted retaliation claim that was based on retaliatory conduct occurring after the plaintiff filed her initial EEOC charge. The general rule in this Circuit is that "a claim 'alleging retaliation by an employer against an employee for filing an EEOC charge'" is "reasonably related to the claims asserted in an EEOC complaint." Deravin, 335 F.3d at 201 n.3 (quoting Butts, 990 F.2d at 1402-03). The defendant in Malarkey, however, argued that the plaintiff's retaliation claim could not be reasonably related to the age discrimination claims in her EEOC charge because her age discrimination claims had already been dismissed when she sought to add the retaliation claim. Rejecting this argument, the Court of Appeals for the Second Circuit observed: "We see no reason why a retaliation claim must arise before

administrative proceedings terminate in order to be reasonably related.  Instead, the rule is that a claim must arise only after the EEOC complaint has been filed."  <u>Malarkey</u>, 983 F.2d at 1209.

The defendants in this case misread this language to state a per se rule that an unexhausted retaliation claim based upon conduct that occurred before the filing of an EEOC charge can never be reasonably related to the allegations in the charge. The Court of Appeals has eschewed such per se rules and has observed that the inquiry of reasonable relatedness is fact-specific.  <u>See</u> <u>Williams</u>, 458 F.3d at 71 (rejecting per se rule that a charge of discrimination is never reasonably related to an EEOC charge alleging only retaliation); <u>see also</u> <u>Malarkey</u>, 983 F.3d at 1209 (rejecting per se rule that all retaliation claims are reasonably related).

In fact, numerous courts in this Circuit have found retaliation claims arising out of retaliatory conduct occurring prior to the employee's filing of an EEOC charge to be reasonably related to claims of discrimination formally included in the charge where the charge includes enough factual allegations to alert the EEOC to the possibility that the employee was subjected to retaliation.  <u>See, e.g.</u>, <u>Ridgway v. Metro. Museum of Art</u>, No. 06 Civ. 5055, 2007 WL 1098737, at *5 (S.D.N.Y. Apr. 10, 2007) (holding that retaliation claim was

reasonably related to disability discrimination claim stated in
EEOC charge where charge alleged that plaintiff had requested
reasonable accommodations, that his requests had been denied,
and that he was subsequently terminated); Rieger v. Orlor, Inc.,
427 F. Supp. 2d 105, 115 (D. Conn. 2006) (holding that
retaliation claim was reasonably related to claims in EEOC
charge where charge alleged that plaintiff requested an
accommodation and was thereafter transferred and then
terminated); see also Barriera v. Bankers Trust, No. 98 Civ.
3641, 2003 WL 22387099, at *4-5 (S.D.N.Y. Oct. 20, 2003).

    While courts have also found such pre-EEOC charge
retaliation claims not to be reasonably related to claims
explicitly made in the charge, these cases have generally
involved charges which were devoid of any reference to a
retaliatory motive or any allegation that the plaintiff had
engaged in a protected activity.  See, e.g., Mathirampuzha, 548
F.3d at 76-78 (holding that retaliation claim was not reasonably
related to exhausted discrimination claim where EEOC charge
described a single alleged act of discrimination and did not
"assert or imply a retaliatory motive"); Moguel v. Covenant
House/New York, No. 03 Civ. 3018, 2004 WL 2181084, at *7
(S.D.N.Y. Sept. 29, 2004) (holding that retaliation claim was
not reasonably related to claims in administrative complaint
which contained no mention of any protected activity nor of any

16

retaliatory motive); Cordoba v. Beau Deitl & Assocs., No. 02
Civ. 4951, 2003 WL 22927874, at *10 (S.D.N.Y. Dec. 2, 2003)
(observing that EEOC complaint's failure to refer to any
protected activity was fatal to plaintiff's attempt to bring
unexhausted retaliation claim); Bailey v. Colgate-Palmolive Co.,
No. 99 Civ. 3228, 2003 WL 21108325, at *13 (S.D.N.Y. May 14,
2003) (holding that retaliation claim was not reasonably related
to claims in EEOC charge where charge made did not refer to any
retaliatory conduct on part of employer nor any protected
activity on part of employee); cf. Burke v. Gutierrez, No. 04
Civ. 7593, 2006 WL 89936, at *12 (S.D.N.Y. Jan. 12, 2006)
(observing that "where a plaintiff does not explicitly allege
retaliation in an administrative complaint, the subsequent
investigation of other forms of discrimination cannot reasonably
be expected to extend to retaliation").

While the plaintiff did not check the box for "retaliation"
on her EEOC charge form, her attached affidavit clearly alleges
that she asked the Transit Authority to accommodate her
religious beliefs by allowing her to wear a skirt as part of her
uniform, that her request was denied, and that she was
thereafter terminated because she refused to comply with the
Transit Authority's uniform policy.  The plaintiff sufficiently
alleged that she engaged in a protected activity, because a
claim for retaliation can be based upon a request for reasonable

accommodation. See Weixel v. Bd. of Educ. of the City of New York, 287 F.3d 138, 149 (2d Cir. 2002) (holding that request for reasonable accommodation of disability constitutes protected activity); Gratton v. JetBlue Airways, No. 04 Civ. 7561, 2005 WL 1251786, at *10 (S.D.N.Y. May 25, 2005) (noting that request for accommodation of pregnancy constitutes protected activity as defined by Title VII). Moreover, the allegations that her request for an accommodation was denied and that she was subsequently terminated for failure to comply with the uniform policy gives rise to a plausible inference of retaliatory intent. These allegations can fairly be read to encompass a retaliation claim. Therefore, the defendants' motion to dismiss the plaintiff's retaliation claim under Title VII is **denied**.

## CONCLUSION

The Court has considered all of the arguments of the parties. To the extent not specifically addressed above, the remaining arguments are either moot or without merit. For the reasons discussed above, the defendants' motion to dismiss the Complaint in part is **denied.** The Clerk is directed to close Docket No. 5.

**SO ORDERED.**

**Dated: New York, New York**
**June 30, 2009**

John G. Koeltl
United States District Judge

18